The judgment of the United States Customs Court is *reversed*.

UNITED STATES *v.* L. OPPLEMAN, INC. (No. 4330)[1]

[1] C. A. D. 158.

United States Court of Customs and Patent Appeals, February 3, 1941

*Charles D. Lawrence,* Acting Assistant Attorney General (*John J. McDermott,* special attorney, of counsel) for the United States.

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for appellee.

[Oral argument December 10, 1940, by Mr. McDermott and Mr. Allerton deC. Tompkins]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

The imported merchandise involved herein consists of small organs operated by means of pedal-activated bellows, and chairs or benches for use with the organs.

The Collector of Customs at the port of New York classified the goods and held them to be dutiable under the provisions of paragraph 1541 (a) of the Tariff Act of 1930, the pertinent portion of which reads:

Musical instruments and parts thereof, not specially provided for * * * 40 per centum ad valorem.

The importer, appellee, protested the collector's said classification and assessment of duty, claiming, among other claims, the merchandise to be dutiable at 30 per centum ad valorem under the portion of said paragraph as amended by the French Reciprocal Trade Agreement, T. D. 48316, which reads:

Wood-wind musical instruments and parts thereof, not specially provided for, 30% ad val.

After trial in the city of New York before the First Division of said court, judgment was rendered sustaining the said claim of appellee, from which judgment this appeal was taken.

The record is quite short. One witness, president and manager of appellee, testified in its behalf, and a skilled wood-wind musician testified for the United States.

One of the imported organs was produced at the trial. It is described in the brief of appellant, and the description is not questioned by appellee, as being 11 inches wide, 2 feet 2 inches long and 2½ feet high; and its key board holds slightly over three octaves. There was another organ in the importation which was not produced at the trial, apparently similar in all respects except as to size. It contained, it is said, five octaves. The organs are not pipe organs and are operated by a bellows which is fed with air by means of pedals. The goods are made of wood with metal bars attached to the pedals. The keys are covered with celluloid and a portion of the bellows is made of rubber.

The record discloses that appellee was engaged in the business of selling sporting goods specialties. It was not claimed that the imported merchandise is in any way connected with sporting goods, and appellee apparently was not a dealer in musical instruments generally.

Appellee's witness stated that he is a mechanic; that he never had any musical experience with musical instruments; that he never studied music and that he played no musical instrument. His sole experience consisted in buying, selling and repairing articles like the organ in evidence for about 5 years. In his direct testimony the witness also demonstrated that when the air is kept moving through the bellows and the keys are pressed down sounds result. On direct examination he gave no testimony whatsoever as to what constitutes a wood-wind musical instrument.

Under cross-examination the witness gave to the following question the following answer:

X Q. Can you define a wood wind musical instrument?—A. To my mind, I am not an expert on musical instruments, but to my mind anything that plays a tone and operates by wind and is made out of wood is a wood wind musical instrument.

This answer might well have been stricken on motion. Of course it may have been considered by the cross-examiner as of little or no weight, in view of the complete lack of qualification of the witness to define the expression "wood-wind musical instrument."

There was no further evidence in the case of appellee proving or tending to prove that the collector erred in his classification of the merchandise and that the claimed classification was correct.

The witness for the government was a musician by profession who had studied music for from 10 to 20 years, finishing his studies at the Conservatory of Music in Paris, France. He specialized in playing the oboe, and the English horn which is another kind of oboe. Both of these instruments are wood-wind musical instruments. The witness played these instruments in the Concert Rouge, Paris, France, from 1919 to 1923; and from 1923 until 1929 he played with the New York Symphony Orchestra in Carnegie Hall, New York City, under the direction of the well-known conductor Walter Damrosch. Since 1929, the witness testified, he had played at the Roxy Theatre in New York City and also on the WOR. broadcasting program. He also played his wood-wind instruments at Radio City Music Hall, New York City, and was a member of the official band at the World's Fair in New York. He explained the important instrument arrangement in the Damrosch orchestra to be the string section, the wood-wind section and the brass section. The wood-wind section, he stated, included the flute, the piccolo, the oboe, the English horn, clarinet, bass clarinet, bassoon, and counter bassoon; and then he stated that the above-mentioned wood-wind instruments and also the French horn—even though not

made of wood—were all the wood-wind musical instruments he had ever heard of.

Despite his extraordinary musical experience and clear qualification to do so, the government witness was not permitted by the trial court, upon objection by counsel for appellee, to give a definition of a wood-wind musical instrument. Generally speaking, the grounds for the said objections were that the witness had no familiarity with the merchandise in suit and that the answer of the witness should be confined to the kinds of orchestras in which the witness played.

Upon this record the trial court sustained the claim of the appellee, stating:

\* \* \* The merchandise was classified by the collector as a musical instrument. Therefore, the only questions for our determination are whether or not the merchandise is of wood or in chief value of wood, and whether or not it is operated by means of wind.

The evidence offered at the trial is sufficient to establish that the merchandise is in chief value of wood and also that it is operated solely by means of wind. Being classified as a musical instrument, it would, therefore, appear to be a wood-wind musical instrument, as claimed by the plaintiff.

In our opinion the trial court erred in its conception of what constituted in a tariff sense "wood-wind musical instruments." There is not a scintilla of competent evidence in the record tending to prove the contention of appellee. No trial court is bound to accept evidence that may be offered, even if in the record without objection, when it clearly appears, as it does in this case, that the witness cannot possibly be competent to have knowledge of the matter involved in the question he answers.

The only knowledge of musical instruments possessed by the witness for appellee was that gained in making mechanical repairs on goods like those here involved which were bought and sold by his company.

In our opinion the witness for the government was amply qualified to state what constitutes a wood-wind musical instrument. It was not necessary that he should have shown playing experience with all of the wood winds, or that he should have had experience with the organs involved. We think that when the witness said that the wood winds he described as being in the Damrosch orchestra were all that he had ever heard of, it was quite reasonable to assume that he included all of the wood winds which were known to musicians. There is no contention here that the imported articles are used in orchestras or bands.

We agree with appellee in his contention that we may not limit the provisions of the involved paragraph only to orchestral instruments; and we also agree that the language of the French Trade Agreement, as it applies to this case, does not refer only to instruments used in, or to divisions of, an orchestra. This, however, does not mean that the

involved articles must be considered as wood-wind instruments. Wood-wind instruments such as are recognized by musical authorities may be, and are, used apart from an orchestra as freely as may be the involved organs herein. Furthermore, it appears to us that there is a very distinct line of demarcation between what is generally and commonly known as wood-wind musical instruments and the imported merchandise.

All wood-wind musical instruments appear to be defined by the lexicographers and musical authorities as those which are supplied by air from the lungs of the player. To mention a few, we find in Webster's New International Dictionary (1939) the following:

> wind instrument. *Music*. Any instrument sounded by wind, esp. by the breath. Those blown by the breath are classified as *wood-wind instruments*, or *wood winds*, as the flute, oboe, bassoon, clarinet; and *brass-wind instruments*, or *brass winds*, as the trumpet, horn, trombone, tuba.

The Encyclopaedia Britannica, 14th edition (1929), vol. 23, page 646, contains the following:

> WIND INSTRUMENTS, a numerous and important section of the orchestra, classified according to the acoustic properties of the instruments and to certain important structural features. The first great natural subdivision is that of (A) mouth blown, and (B) mechanically blown, instruments.
>
> Section A.—This falls into the classes of (1) wood wind; (2) brass wind, with their numerous subdivisions.
>
> \* \* \* \* \* \* \*
>
> Section B: Mechanically Blown Instruments.—This section consists mainly of instruments having the air supply fed by means of bellows; it comprises the two classes (1) with keyboard, (2) without keyboard.
>
> 1. This includes all kinds of organs and to this class also belong the accordion and concertina and the numerous instruments of the harmonium type which have free instead of beating reeds.

In a standard authority, Grove's "Dictionary of Music and Musicians," 4th edition, edited by H. C. Colles, published by the MacMillan Co., 1940, vol. 5, page 737, the following is stated:

> WIND INSTRUMENTS
>
> This designation is by common consent held to include all instruments supplied by air from the lungs of the player and to exclude instruments such as the organ, harmonium and concertina which receive their wind supply from bellows fed with natural air.

No authority has been brought to our attention, and diligent research has revealed none, which contains anything tending to support the contention that organs, such as those here involved, should be classified as claimed by appellee.

For the reasons stated herein we are of opinion that the judgment appealed from should be, and the same is hereby *reversed*.